IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AEP INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-315-WKW |
| | ) | [WO] |
| THIELE TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff AEP Industries, Inc., ("AEP") has a plant in Montgomery, Alabama, that manufactures flexible plastic packaging products.  In 2013, AEP wished to purchase plastic bag manufacturing equipment that met certain specifications.  Defendant Thiele Technologies, Inc. ("Thiele") agreed to manufacture the equipment for AEP.  AEP contends that the equipment Thiele manufactured did not meet its specifications; that some of the equipment was never delivered; and that Thiele committed fraud and breach of warranty by failing to manufacture equipment that met Thiele's express and implied representations, promises, and warranties.  (Doc. # 1.)

Before the court are Thiele's motion to transfer venue and motion to dismiss.  (Doc. # 11.)  Upon consideration of the motions, the court concludes that the motion to transfer venue is due to be granted.  Therefore, the court will not rule on the motion to dismiss.

## I.   JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  AEP is a Delaware corporation with its principal place of business in New Jersey.  Thiele is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.   Among the damages AEP seeks is a refund of $1,835,375.10 AEP paid Thiele for manufacturing equipment that AEP contends is defective.  (Doc. # 1 ¶18.)  Thus, the amount in controversy exceeds $75,000.00. Personal jurisdiction is not contested.

AEP's claims for breach of contract, breach of warranty, and fraud concern a contract between AEP and Thiele for the manufacture and delivery of certain equipment to AEP's Montgomery, Alabama plastics manufacturing plant; the contract was consummated in Montgomery, Alabama; and Thiele delivered, installed, and modified a substantial portion of the equipment at AEP's Montgomery plant, where it remains to this day.  Therefore, venue is proper.  28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."); *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 578 (2013) ("[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause.").

## II.    DISCUSSION

### A.    Standard of Review

A forum-selection clause "does not render venue in a court 'wrong' or 'improper'" under the statutes governing venue in federal courts.  *Atl. Marine*, 134 S. Ct. at 579.  However, a valid forum selection clause may be enforced through a motion to transfer based on the doctrine of *forum non conveniens*.  *Id*. at 580-81. For cases in which the transferor and transferee forums are both within the federal court system, the doctrine is codified at 28 U.S.C. § 1404(a).  *Id*. at 580.  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

Ordinarily, a court considering a § 1404(a) motion considers a number of factors relating to the convenience of the parties and the public interest to decide whether, on balance, a transfer would serve "'the convenience of parties and witnesses'" and be "'in the interest of justice.'"  *Atl. Marine*, 134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)).  Those factors include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a

3

plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

However, when the parties have a contract that contains a valid forum selection clause, "[t]he calculus changes." *Atl. Marine*, 134 S. Ct. at 581. Then, "the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,'" and the court gives the forum selection clause "'controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

> The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways.

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .

> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .

> As a consequence, a district court may consider arguments about public-interest factors only. . . .  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

> Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a)

transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Atl. Marine*, 134 S. Ct. at 581-82 (citations omitted).

## B.   The Parties' Contract Contains a Valid Forum Selection Clause.

### 1.   *Governing Law*

Because the applicable standard of review turns on whether the parties have a "valid forum-selection clause," *Atl. Marine*, 134 S. Ct. at 581, the court must first determine whether the parties' contract in this case contains such a clause. This determination turns on whether the contract includes Paragraph 11 of Thiele's November 25, 2013 proposal labeled "Governing Law and Venue For Legal Actions." (Doc. # 12-1 at 28 ¶ 11.)

Paragraph 11 contains not only a forum selection clause, but also a choice-of-law provision, which provides that "the contract . . . shall be interpreted and construed in accordance with the laws of the state where [Thiele] manufactures the products." (Doc. # 12-1 at 27 ¶ 11.) It is undisputed that Thiele manufactured the equipment in Green Bay, Wisconsin, Fergus Falls, Minnesota, and Reedley, California.[1] (Doc. # 12-1 at 4 ¶¶ 14-16.) However, neither the choice-of-law nor the forum selection provisions apply if the parties' contract does not include them.

---

[1] AEP argues that the machinery was also manufactured in Alabama because, after Thiele shipped the first line of equipment to AEP, Thiele representatives went to Montgomery to make numerous changes to the equipment in an attempt to meet AEP's specifications. For the reasons stated in Section III.C., the court concludes that Thiele did not manufacture the equipment in Alabama.

Therefore, to determine whether Paragraph 11 exists in the contract that the parties

formed in Alabama, the court must apply Alabama law.[2]  *See St. Paul Fire &*

*Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1

(11th Cir. 2009) ("Because this is a diversity case concerning an Alabama

insurance contract, we apply Alabama substantive law.  A federal court sitting in

diversity, as in this case, must apply the choice of law principles of the state in

which it sits. In determining which state's law applies in a contract dispute,

Alabama follows the principle of *lex loci contractus*, applying the law of the state

---

[2] In support of its motion to transfer venue, Thiele cites law from including Alabama, as well as from some jurisdictions that are not controlling, such as Florida. AEP mainly relies on Alabama law.  Thus, the parties do not object to applying Alabama law to the contract formation issues here.  In any event, the applicable Alabama law primarily consists of Alabama's statutes adopting the Uniform Commercial Code, which, as its name implies, and for practical reasons, is generally uniform throughout the states that have adopted it.  More importantly, however, "[a]pplying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012); *see also Trans–Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract."); *DeNicola v. Cunard Line Ltd.*, 642 F.2d 5, 8 n.2 (1st Cir. 1981) (holding, in an admiralty case, that "[g]iving effect to [the choice of law] provision for the purpose of determining whether it and the other [contractual] conditions should be given effect obviously would be putting the barge before the tug."); *Williams v. Gen. Elec.*, 13 F. Supp. 3d 1176, 1181 n.5 (N.D. Ala. 2014) ("[A] court cannot sensibly apply a contractual choice-of-law provision before the court determines that the parties have a valid contract.").  *But see P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general. . . . Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law.").  In this case, unlike in *P&S*, the applicability of the forum selection clause is a question of the *existence* of a forum selection clause (*i.e.*, whether the parties formed a contract that includes the clause), not a question of the *enforceability* of a valid forum selection clause that is indisputably in the parties contract.

where the contract was formed. We are being asked to interpret an Alabama insurance policy; therefore, Alabama substantive law applies." (citation omitted)).

### 2. *Thiele's Offer*

On November 25, 2013, Thiele sent AEP a proposal to manufacture plastic-bag-making equipment.  (Doc. # 12-1 at 7.)  Thiele designated the proposal as number 13-10-56279 R3.  (Doc. # 12-1 at 7.)  Thiele's proposal included detailed terms, such as specifications and prices for the various components of the equipment to be manufactured, a statement that the offer would be valid for thirty days, a proposed shipping date, and other terms and conditions of sale such as warranties and provisions governing testing materials, shipment, and contract cancellation.  (Doc. # 12-1 at 7-27.)  The proposal expressly indicated that it was intended to serve as the parties' contract.  (*See, e.g.,* Doc. # 12-1 at 27 ¶ 11 (provision in the "Terms and Conditions" section of the proposal discussing "the contract between Seller and Purchaser, including these Terms and Conditions of Sale").)

The parties agree that Thiele's proposal constituted an offer.  (*See*, *e.g.*, Doc. # 16 at 9-10, 16-17 (AEP's brief in opposition to the motion to transfer, characterizing AEP's purchase order as an "acceptance" that contained terms and conditions different from, or in addition to, those in Thiele's proposal/"offer").) *See* Ala. Code § 7-2-206(1)(a) ("Unless otherwise unambiguously indicated by the language or circumstances: . . . An offer to make a contract shall be construed as

inviting acceptance in any manner and by any medium reasonable in the circumstances."); *see generally Bergquist Co. v. Sunroc Corp.*, 777 F. Supp. 1236, 1248-49 (E.D. Pa. 1991) (collecting cases from numerous jurisdictions to explain that, under the UCC, "[t]he general rule is price quotations are not offers, but rather are mere invitations to enter into negotiations or to submit offers . . . . However, if detailed enough, a price quotation can amount to an offer which can be accepted. But to do so, the offer[or] must intend that the contract exist upon acceptance of the offer; that is, it must reasonably appear from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract. Whether this price quotation is an offer is a question of fact that depends upon the parties' acts, their expressed intent, and the circumstances surrounding each transaction." (citations omitted)).

Thiele's offer contained the following relevant provisions:

1. Applicability: Seller's sale of products and services is expressly conditioned upon the terms and conditions contained herein. All quotations, offers to sell, proposals, acknowledgments and acceptances of orders by Seller are subject to these Terms and Conditions of Sale, and acceptance by Purchaser is expressly limited to them. Any conflicting terms and conditions set forth in any purchase order or similar communication submitted to Seller by Purchaser are objected to, and are deemed proposals for addition to the contract of sale, and do not become part of the contract of sale between Seller and Purchaser unless expressly and separately agreed to in writing by Seller. Authorization by Purchaser, whether written or oral, for Seller to supply the products and services will constitute acceptance of these Terms and Conditions of Sale.

. . . .

11.    Governing Law And Venue For Legal Actions: The contract between Seller and Purchaser, including these Terms and Conditions of Sale, shall be interpreted and construed in accordance with the laws of the state where Seller manufactures the products. The exclusive jurisdiction for any legal proceedings involving the contract between Seller and Purchaser, including these Terms and Conditions of Sale, shall be the state or federal courts located in the county or judicial district where Seller manufactures the products. Purchaser expressly consents to the jurisdiction and venue of such courts.

(Doc. # 12-1 at 26-27.)

## 2.    *AEP's Acceptance*

On December 3, 2013, AEP sent Thiele a purchase order for "QUOTE # 3-10-56279 R3."  (Doc. # 16-1 at 33.)  AEP's purchase order contained the following relevant provision:

2. VARIATIONS: No variations in the delivery schedule, price, quantity, specifications, *or other provisions of this order* will be effective unless agreed to in writing and signed by the purchasing agent or other authorized representative of [AEP].

(Doc. # 16-1 at 36 ¶ 2 (emphasis added).)

AEP's purchase order did not contain a provision regarding forum selection in the event of a dispute involving the contract.  (Doc. # 16-1 at 36.)

Ala. Code 1975 § 7-2-207(a) provides:

A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

9

AEP does not argue that the purchase order failed to operate as an acceptance on grounds that the purchase order expressly made acceptance conditional on Thiele's assent to AEP's terms.   Instead, AEP argues that its purchase order operated as an acceptance that contained terms in addition to, or different from, Thiele's offer.  (*See* Doc. # 16 at 17.)   However, AEP does not point to *any* term in its acceptance that is "in addition to or different from" Thiele's forum selection clause.  As AEP points out, its purchase order acceptance did state that "[n]o variations in the . . . provisions of this order [would] be effective," but AEP does not explain *which* provision of its purchase order, if any, would be "varied" by the forum selection clause in Thiele's earlier proposal.[3]  Accordingly, with respect to forum selection, it does not appear that the acceptance contains

---

[3] AEP's purchase order did contain the following provision:

12. MISCELLANEOUS: This purchase order, as the same may be amended or modified in writing, supersedes all prior understandings, transactions and communications, or writings with respect to the matters referred to herein. When [Thiele] has not expressly accepted this order, Thiele, by commencing work hereunder, shall be deemed to have agreed to all the provisions hereof.

(Doc. # 16-1 at 36 ¶ 12.)

AEP does not argue that Paragraph 12 of its purchase order is applicable to the court's consideration of the motion to transfer.   In fact, AEP does not mention Paragraph 12. Accordingly, for purposes of the motion to transfer, the court will ignore Paragraph 12. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Polk v. Sears, Roebuck, & Co.*, No. 11–0725–WS–B, 2012 WL 1640708, *3 (S.D. Ala. May 8, 2012) ("It is well-established that courts cannot make a party's arguments for it or 'fill in the blanks' on that party's behalf."). *Cf. Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (holding that federal courts "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it").

additional or different terms from the offer.  Instead, the offer contains a forum selection clause, and the acceptance says nothing at all about the selection of a forum.  Therefore, the parties' contract contains a forum selection clause.

Alternatively, to the extent that AEP's purchase order could be deemed an acceptance containing terms that are different from or in addition to Thiele's offer, the forum selection clause is nevertheless part of the parties' contract.   Alabama's Uniform Commercial Code states:

> The additional terms [in the acceptance] are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They materially alter it; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Ala. Code § 7-2-207(2).

To the extent that AEP's acceptance conflicts with the forum clause in Thiele's offer by virtue of omitting a forum selection clause, the terms of AEP's acceptance are "different from," not "in addition to" Thiele's offer.   If read literally, § 7-2-207(2) applies only to additional terms, not different ones.  Some states approach § 7-2-207(2) literally; others view § 7-2-207(2) as applying to both different and additional terms.  *See generally* 24 Causes of Action 575 § 24 (describing different jurisdictions' approaches to § 7-2-207(2)).  Neither party cites a controlling Alabama case definitively setting forth Alabama's approach to the

issue.[4]   However, AEP contends that § 7-2-207(2) applies.[5]   (Doc. # 16 at 17.) Thiele contends that, if § 7-2-207(2) applies, it favors Thiele because, in making its offer, Thiele specifically objected to the incorporation of different or additional terms.  (Doc. # 17 at 6-7.)

Thiele is correct.  Under § 7-2-207(2)(c), different or additional terms in the acceptance do not become part of the parties' agreement if the offeror has given notification of objection to the additional terms.  Thiele's offer expressly stated that

> [a]ny conflicting terms and conditions set forth in any purchase order or similar communication submitted to Seller by Purchaser are objected to, and are deemed proposals for addition to the contract of sale, and do not become part of the contract of sale between Seller and Purchaser unless expressly and separately agreed to in writing by Seller.

(Doc. # 12-1 ¶ 1.)

Alternatively, as AEP itself points out, an acceptance negating a forum selection clause would be a material alteration to the terms of the offer and, therefore, would not become part of the parties' contract.  (*See* Doc. # 16 at 18

---

[4] The cases cited by AEP are distinguishable. The holding of *Electrical Box & Enclosure, Inc. v. Comeq, Inc.*, 626 So. 2d 1250 (Ala. 2003) did not turn on the application of § 7-2-207(2) because both parties' forms incorporated the contested arbitration clause by reference.  Similarly, in *Kennedy Elec. Co., v. Moore-Handly, Inc.,* the offeror's terms were attached to the acceptance.

[5] Because both parties appeal to § 7-2-207(2), neither party can be prejudiced by its application, and the court will assume, without deciding, that Alabama would apply § 7-2-207(2) in cases where, as here, the acceptance proposes terms that are different from the offer rather than merely additional to the offer.   The court notes that applying § 7-2-207(2) to different as well as additional terms is consistent with Official Comment 3 to § 7-2-207(2), which states that "[w]hether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2)."

(citing *Duro Textiles, LLC v. Sunbelt Corp.*, 12 F. Supp. 3d 221, 224 (D. Mass. 2014).)[6]

Accordingly, even if AEP's purchase order could be construed as containing "different" terms providing for no forum selection clause, those different terms are excluded from becoming part of the parties' agreement by virtue of § 7-2-207(2)(c).  Therefore, to the extent that the provisions of AEP's purchase order are different from the forum selection clause in Thiele's proposal, the provisions of AEP's purchase order are not part of the parties' contract, and the provisions of the Thiele's offer govern.

## C.   Under the Forum Selection Clause, the United States District Court for the Middle District of Alabama is Not an Appropriate Venue.

The forum selection clause provides that exclusive jurisdiction for any legal proceedings involving the contract will lie in "the state or federal courts located in the county or the judicial district" where the equipment was manufactured.  In this case, it is undisputed that the equipment was manufactured in Green Bay, Wisconsin, Fergus Falls, Minnesota, and Reedley, California.  (Doc. # 12-1 at 4 ¶¶ 14-16.)   AEP argues that the equipment was also manufactured in Alabama because, after Thiele manufactured some of the equipment and shipped it to

---

[6] AEP cites *Duro Textiles* for the proposition that the forum selection clause in Thiele's offer is "knocked out" because it conflicts with AEP's acceptance.  However, *Duro Textiles* does not support AEP's position.  AEP also cites Ala. Code 1975 § 7-2-207(3) for the proposition that conflicting terms in the parties' forms cancel each other out.  Section 7-2-207(3) is inapposite.  It applies in cases when "[c]onduct by both parties . . . recognizes the existence of a contract . . . although the writings of the parties do not otherwise establish a contract."  Ala. Code 1975 § 7-2-207(3).  Neither party argues that this is such a case.

Montgomery, Alabama, engineers and other personnel from Thiele came to Alabama over the course of five months to overhaul the machinery and rewrite software in an attempt to make the equipment meet AEP's specifications. (Doc. # 16-1 at 5 ¶¶ 16, 18. Thiele contends that its work on the equipment constituted "installing" the equipment rather than "manufacturing" it. The only definition the parties provide to establish the meaning of "manufacturing" and "installation" is the following:

> "Manufacture" is defined as the process of making wares by hand or by machinery especially when carried on systematically with division of labor, whereas "install" means to make (a machine, a service, etc.) ready to be used in a certain place.

(Doc. # 12 at 10 (citing *Merriam-Webster's Collegiate Dictionary* 648, 757 (11th ed. 2012); Doc. # 16 at 14.)

Because both parties agree on this definition and provide no other, the court concludes that the parties agree that the term "manufacture" is unambigious and that this definition conveys their intent as to the meaning of the term. Therefore, the court will use the parties' definition. *See Certain Underwriters at Lloyd's, London v. S. Nat. Gas Co.*, 142 So. 3d 436, 454 (Ala. 2013) (holding that contracts "must be construed to give effect to the intent of the parties and that, if the terms of the contract are clear and unambiguous, there is no need for judicial construction"); *see also Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000) ("'[A]s with any other contract, the parties' intentions control.'" (quoting

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *Loerch v. Nat'l Bank of Commerce of Birmingham*, 624 So. 2d 552, 553 (Ala. 1993) (holding that "the intention of the parties controls in construing a written contract," and that, where the contract terms are unambiguous, the parties' intent is derived from the ordinary meaning of the terms of the contract itself).

AEP argues that, after some of the machinery was "installed" in Montgomery, it failed to work as promised.  (Doc. # 16 at 11-12.)  Therefore, according to AEP, over a period of more than five months, Thiele engineers and personnel came to Montgomery, Alabama, where they "added," "designed," "installed," "modified," "redesigned," "removed," and "replaced" numerous parts of the equipment.  (Doc. # 16 at 13-14.)  AEP also alleges that Thiele sent computer programmers to Montgomery to "rewrite and redesign the software to correct, add, and delete aspects of the program."  (Doc. # 16 at 14.)  Thiele does not, however, allege that any of the altered parts or software programs were "*ma[de]* . . . by hand or by machinery especially . . . systematically with division of labor."  (Doc. # 12 at 10; Doc. # 16.)  Thiele also does not provide any evidence that the overhauling of the equipment as a whole involved "*making*" the equipment "by hand or by machinery especially when carried on systematically with division of labor."  (Doc. # 12 at 10; Doc. # 16.)  Accordingly, it does not appear from this record that any of the alterations to the equipment that occurred in Alabama involved "manufacturing" as defined by the parties.  Rather, the modifications

15

Thiele performed in Montgomery were more in the nature of "installation," which, in contrast to manufacturing, the parties define as "mak[ing]" the equipment and its component parts "ready to be used in a certain place."  (Doc. # 12 at 10; Doc. # 16.)

Therefore, the forum selection clause does not allow venue to lie in the United States District Court for the Middle District of Alabama.

**D.**   **The Case Will Be Transferred to the United States District Court for the Eastern District of Wisconsin**

Pursuant to the forum selection clause, this case may be transferred to a United States District Court in any of three venues: the Sixth Division of the District of Minnesota; the Fresno Division of the Eastern District of California; and the Green Bay Division of the Eastern District of Wisconsin.  Thiele seeks a transfer to the United States District Court for the Eastern District of Wisconsin.

AEP does not argue that either of the other two district courts would be more convenient.  Further, AEP does not argue that this is an unusual case in which public interest factors weigh against transfer to the Eastern District of Wisconsin. *See Atl. Marine*, 134 S. Ct. at 581-82 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .  [When parties have agreed to a forum-selection clause,] a district court may consider arguments about public-interest factors only. . . .  Because those factors will rarely defeat a transfer motion,

16

the practical result is that forum-selection clauses should control except in unusual cases.").

Accordingly, this case will be transferred to the United States District Court for the Eastern District of Wisconsin, Green Bay Division.

## III.   CONCLUSION

Accordingly, Thiele's Motion to Transfer Venue (Doc. # 11) is GRANTED, and this action is TRANSFERRED to the United States District Court for the Eastern District of Wisconsin, Green Bay Division.

The Clerk of the Court is DIRECTED to take the necessary steps to effectuate the terms of this order.

DONE this 29th day of March, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE